UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN M. FLOYD & ASSOCIATES, INC.,

       Plaintiff,

vs.                               Case No.  3:09-cv-168-J-MCR

FIRST FLORIDA CREDIT UNION,

       Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's Motion for Final Summary

Judgment (Doc. 67) filed January 3, 2011.  Plaintiff filed a response in opposition to this

motion on February 1, 2011.  (Doc. 88).  Accordingly, the matter is now ripe for judicial

review.

## I.  PROCEDURAL BACKGROUND

Plaintiff, John M. Floyd & Associates, Inc., filed a Complaint in this Court on

February 24, 2009 against the Defendant, First Florida Credit Union, alleging breach of

contract.  (Doc. 1).  Plaintiff filed an Amended Complaint on April 30, 2009, to which

Defendant responded by filing a Motion to Dismiss (Doc. 11).  Plaintiff then filed a

Second Amended Complaint (Doc. 24) on August 7, 2009 in which Plaintiff alleged

damages in the amount of $199,146.67 as a result of Defendant's breach of contract.

On August 28, 2009, Defendant filed another motion seeking to have the Second

Amended Complaint dismissed for failure to state a claim.  (Doc. 27).  On May 5, 2010,

the undersigned denied the Motion to Dismiss on the basis that in order to resolve it, the

Court would be required to interpret the Confidentiality provision of the Agreement and

such interpretation was better suited to a motion for summary judgment.  (Doc. 48, p.7).

Thereafter, Defendant filed the instant Motion asking the Court to grant summary

judgment in its favor on Plaintiff's breach of contract claim.

## II.  <u>BACKGROUND FACTS</u>[1]

Plaintiff is a consulting firm that provides services to financial institutions.  On

December 29, 2005, Plaintiff and Defendant, a financial institution, entered into an

agreement regarding the installation and operation of Plaintiff's Overdraft Privilege

Program for Defendant's benefit (the "Agreement").  A copy of the Agreement is

attached to the Second Amended Complaint and indicates Defendant agreed to provide

tracking information to Plaintiff showing its non-interest income related to NSF and

overdraft income for a period of twenty-four billing months beginning ninety days after

the installation of the Overdraft Privilege Program.  In addition, Defendant agreed to pay

Plaintiff fourteen percent (14%) of the increased non-interest income for the twenty-four

month period.  According to Plaintiff, the payments began in June 2006 and were to

continue for a period of twenty-four billing months.  Plaintiff admits that Defendant did

indeed make twenty-four monthly billing payments.  (Doc. 88, ¶14).

In arguing Defendant breached the Agreement, Plaintiff points to a provision

under the "Confidentiality" heading which provides:

---

[1] Consistent with summary judgment practice, the facts stated are either undisputed or are stated in a light most favorable to Plaintiff.  <u>See</u> <u>White v. Mercury Marine, Div. of Brunswick, Inc.</u>, 129 F.3d 1428, 1430 (11th Cir. 1997).

> If any recommendations or materials or software are shared
> or adopted either in their original or modified form by other
> member institutions, companies or affiliated financial
> institutions of [Defendant] or its holding company, or if
> [Defendant] either acquires or is acquired by another
> financial institution, then [Defendant] agrees to compensate
> [Plaintiff] on the same terms as stated in this proposal
> agreement.

(Doc. 24, Ex. 1).  In January 2007, Defendant merged with another credit union,

Seaboard Credit Union, with Defendant being the surviving financial institution.

According to Plaintiff, as a result of this merger/acquisition, the above provision

"extended the term of the Agreement as contemplated by the parties by including this

language." (Doc. 24, ¶6).  Plaintiff alleges that a new base was created from the

merged institutions in May 2007 and tracking information and fees for this merged

institution were provided to Plaintiff beginning in July 2007.  (Doc. 24, ¶7).  Therefore,

Plaintiff argues, the tracking information and fees should have continued for twenty-four

months as provided in the Agreement, or until July 2009.  Id.  However, Defendant

ceased reporting and paying fees to Plaintiff after August 2008 and therefore, Plaintiff

believes Defendant breached the Agreement.  As a result, Plaintiff claims it has suffered

damages in the amount of $199,146.67 representing ten (10) months of tracking and

fees.  (Doc. 24, ¶¶9-10).

## III.  DISCUSSION

### A.  Standard of Review for Motions for Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact."  Rule 56(c), Fed.R.Civ.P.  Factual

issues are "genuine" when there is a real basis in the record.  See Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

The burden is on the moving party, and is satisfied if there is no evidence in the record

to support an essential element of the non-moving party's case.  See Celotex Corp. v.

Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).

Any evidence presented must be evaluated in the light most favorable to the non-

moving party.  See White, 129 F.3d at 1430 (internal citations omitted).  Additionally, all

reasonable inferences will be drawn in favor of the non-moving party, however, the

inferences must be plausible.  See Griesel v. Hamlin, 963 F.2d 338, 341 (11th Cir.

1992); Mize v. Jefferson City Bd. Of Educ., 93 F.3d 739, 743 (11th Cir. 1996).  If a

reasonable juror could infer from the evidence presented the conclusions upon which

the non-moving party depends, the motion for summary judgment should be denied.

Alphin v. Sears, Roebuck & Co., 940 F.2d 1497, 1500 (11th Cir. 1991).

**B.  Plaintiff's Breach of Contract Claim**

The elements of an action for breach of contract under Florida law are: (1) the

existence of a valid contract, (2) a breach of the contract, and (3) damages resulting

from the breach.  Hayes v. Marriott Ownership Resorts, Inc., No. 6:08-cv-180-Orl-

19KRS, 2008 WL 2783365, *3 (M.D. Fla. July 17, 2008) (citing Friedman v. New York

Life Ins. Co., 985 So.2d 56, 58 (Fla. 4th DCA 2008)).  Here, Defendant takes issue with

the second element: whether there was a breach of the Agreement.  Defendant argues

the clear language of the Agreement required Defendant to report and pay the required

fees for a period of twenty-four months beginning in June 2006 and it did so.  Plaintiff,

on the other hand, argues that once Defendant acquired Seaboard Credit Union, pursuant to the provision in the Confidentiality paragraph, a new billable month period was created and Defendant was required to pay the required fees for a new period of twenty-four months.  (Doc. 88, ¶17).

Pursuant to the terms of the Agreement, Florida law governs.  The Eleventh Circuit, when interpreting contracts under Florida law, "'give[s] effect to the plain language of contracts when that language is clear and unambiguous.'"  Equity Lifestyle Properties, Inc. v. Florida Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1242 (11th Cir. 2009) (quoting Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, 1246 (11th Cir. 2002); Hamilton Const. Co. v. Board of Public Instruction of Dade County, 65 So.2d 729, 731 (Fla. 1953)).  "[I]f a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract."  Jenkins v. Eckerd Corp., 913 So.2d 43, 52 (Fla. 1st DCA 2005) (quoting Quarterman v. City of Jacksonville, 347 So.2d 1036, 1041 (Fla. 1st DCA 1977)).  Here, neither party argues the provision at issue is ambiguous and the Court agrees. Therefore, the Court will limit its consideration to the Agreement itself and will not consider the other submissions provided by Defendant.

The entire Confidentiality provision in the Agreement reads as follows:

> The contents of this proposal should be treated as
> confidential material between [Plaintiff] and [Defendant].  We
> agree that neither [Plaintiff] nor any of our employees or
> contractors will use or disclose any data about [Defendant]
> as a result of this consulting engagement that is not
> published call report information, without prior written
> consent from [Defendant].  We understand that we may use
> the data in our database as long as there is no reference to

[Defendant].  [Defendant] agrees that they will not share any recommendations or materials from this study with anyone not affiliated with [Defendant].  If any recommendations or materials or software are shared or adopted either in their original or modified form by other member institutions, companies or affiliated financial institutions of [Defendant] or its holding company, or **if [Defendant] either acquires or is acquired by another financial institution, then [Defendant] agrees to compensate [Plaintiff] on the same terms as stated in this proposal agreement.**  This provision shall survive the termination of this agreement.

(Doc. 24, Ex. 1) (emphasis added).  Defendant takes the position that this provision is unambiguous and simply provides that upon a merger or acquisition, the Agreement will continue and Defendant will remain responsible for making its monthly billing payments as if nothing happened.  Plaintiff agrees that the provision is unambiguous, however, argues that it "clearly provides for a different billing period in the event of a merger/acquisition and also clearly states how the compensation will be calculated after the merger."  (Doc. 88, ¶18).  Additionally, Plaintiff states that "the clear and concise language of the Agreement provides that the billing period is extended if a merger takes place."  (Doc. 88, ¶9).  The Court cannot agree with Plaintiff's position.

The Confidentiality provision does not state anything about different or extended billing periods or how compensation is calculated after a merger except to note that Defendant agrees to compensate Plaintiff "on the same terms as stated in this proposal agreement."  "[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted."  BMW of North America, Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985) (citing Southern Crane Rentals, Inc. v. City of Gainesville, 429

So.2d 771 (Fla. 1st DCA 1983)). The Agreement is silent with respect to a different billing period or an extension of the billing period in the event of a merger/acquisition as Plaintiff contends. Instead, the Agreement specifically states that upon an acquisition, Plaintiff will be compensated on the "same terms." To interpret the Agreement in the manner Plaintiff asks, the Court would necessarily have to "impose on the parties contractual rights and duties which they themselves omitted." BMW of North America, Inc., 471 So.2d at 587. Plaintiff certainly could have provided in the Agreement for a "different billing period in the event of a merger/acquisition" or for an extension of the billing period by including some language indicating a change would occur. Instead, the Agreement provided for the exact opposite – the same terms. "'Words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable.'" Golf Scoring Systems Unlimited, Inc. v. Remedio, 877 So.2d 827, 829 (Fla. 4th DCA 2004) (quoting Thompson v. C.H.B., Inc., 454 So.2d 55, 57 (Fla. 4th DCA 1984)). The word "same" means the opposite of what Plaintiff is contending – no change. As such, Plaintiff's interpretation is not reasonable.

The Court is left to enforce the Agreement as it finds it – an agreement which provided that upon acquisition of another company, Defendant was to compensate Plaintiff on the same terms, not pursuant to a different billing period or an extended billing period. As it is undisputed that Defendant did compensate Plaintiff on the same terms after the acquisition by continuing to pay Plaintiff 14% of the increased non-

interest income for the full twenty-four month period, Defendant did not breach the Agreement and summary judgment is due in favor of Defendant.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court finds the terms of the Agreement between Plaintiff and Defendant unambiguous.  The Agreement provides that upon acquisition of another company, Defendant will compensate Plaintiff on the same terms and Defendant did just that.  Therefore, Defendant did not breach the Agreement and summary judgment is appropriate on Plaintiff's breach of contract claim.

Accordingly, after due consideration, it is

**ORDERED**:

1.      Defendant's Motion for Final Summary Judgment (Doc. 67) is **GRANTED**. The Clerk shall enter Judgment in favor of Defendant, First Florida Credit Union, and against Plaintiff, John M. Floyd & Associates, Inc.

2.      The pretrial conference scheduled for April 20, 2011 is cancelled.

3.      The Clerk shall close the file.

---

[2] While Plaintiff argues factual issues preclude the entry summary judgment (Doc. 88, ¶22), the "facts" to which Plaintiff refers are simply the parties' different views on the interpretation of the Agreement.  As "construction of the contract is a question of law" for the Court, the parties' conflicting interpretations of the Agreement do not create factual issues and summary judgment is appropriate in this case.  Gulf Group Holdings, Inc. v. Coast Asset Management Corp., 516 F.Supp.2d 1253, 1266 (S.D. Fla. 2007) (citing Friedman v. Virginia Metal Products Corp., 56 So.2d 515, 516 (Fla. 1952)).

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this __14th__ day of March, 2011.

_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record